UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

KELLIE LARKIN,

                        Plaintiff,

v.                                                          5:13-CV-0567
                                                              (GTS)
CAROLYN W. COLVIN, Acting Comm'r of Soc. Sec.,

                        Defendant.
───────────────────────────────────────────────

APPEARANCES:                                           OF COUNSEL:

SHAPIRO & KENNEDY-SMITH LAW FIRM        MAURA A. KENNEDY-SMITH,
  Counsel for Plaintiff                                  ESQ.
120 West State Street
Ithaca, NY 14850

U.S. SOCIAL SECURITY ADMIN.                  LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Kellie Larkin ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 14.) For the reasons set forth below, Plaintiff's motion is granted in part and denied in part,[1] and Defendant's motion is denied.

───────────

    [1]    Plaintiff's motion is granted to the extent she seeks remand for further administrative proceedings, but is denied to the extent she seeks remand solely for calculation of benefits.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on November 4, 1981. Plaintiff earned a general equivalency diploma and attended community college for one year and a half. Her most recent full time employment was as a janitor. Generally, Plaintiff's alleged disability consists of anxiety, low back pain, depression, post traumatic stress disorder ("PTSD"), and agoraphobia. Her alleged disability onset date is April 1, 2006.

### B. Procedural History

On September 11, 2009, Plaintiff applied for Supplemental Security Income. Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 3, 2011, Plaintiff appeared at hearing before the ALJ, Robert E. Gale. (T. 29-59.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on August 13, 2011. (T. 12-28.) On March 11, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-24.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. (T. 17.) Second, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, polysubstance dependency, dysthymic disorder, panic disorder and PTSD are severe impairments, but that Plaintiff's asthma, ear infection, appendicitis, hypertension, headaches, possible seizure related activities, twitching in her lower extremities, right knee pain and obesity are not severe. (T. 17-19.) Third, the ALJ found that

Plaintiff's severe impairments did not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 19-20.) The ALJ considered Listings 1.04, 12.04, 12.06 and 12.09. Fourth, the ALJ found that Plaintiff has

> the residual functional capacity ["RFC"] to lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. She can occasionally engage in postural activities, which include climbing, balancing and kneeling. Mentally, she retains the abilities (on a sustained basis) to perform simple, routine work in a low stress environment, which is defined as understanding, carrying out, and remembering simple instructions; responding appropriately to supervision, coworkers and the public with occasional social contact; responding appropriately to usual work situations; and dealing with changes in a routine work setting.

(T. 20-23.) Fifth, and finally, the ALJ found that Plaintiff is capable of performing her past relevant work as a janitor. (T. 23-24.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in the weight he accorded the medical opinions of record. (Dkt. No. 12 at 12-16 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ impermissibly substituted his lay opinion for that of a competent medical source. (*Id.* at 16-18.) Third, Plaintiff argues that the ALJ erred in his assessment of Plaintiff's credibility. (*Id.* at 18-20.) Fourth, and finally, Plaintiff argues that the ALJ's determination is not supported by substantial evidence. (*Id.* at 20-21.)

In response, Defendant argues that substantial evidence supports the ALJ's RFC determination. (Dkt. No. 14 at 4-11 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.  **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

5

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

"When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. § 416.935(a)). Pursuant to the Contract with America Advancement Act, "[a]n individual shall not be considered ... disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." *Cage*, 692 F.3d at 123 (citing Pub. L. 104-121, 110 Stat. 847 (codified at 42 U.S.C. § 1382c (a)(3)(J))). Therefore, the ALJ must decide "[t]he critical question" of "whether . . . [the claimant would still be] disabled if [she] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1); *see also* 20 C.F.R. § 416.935(b)(2)(I) ("If [the Commissioner] determine[s] that [ the claimant's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). It is the claimant who bears the burden of proof on the issue of whether her drug addiction or alcoholism is material. *See Cage*, 692 F.3d at 123-125.

## IV. ANALYSIS

### A. Whether the ALJ Erred in Weighing the Medical Opinions of Record

After carefully considering the matter, the Court answers this question in the affirmative in part and in the negative in part. The Court would add the following analysis.

Plaintiff argues that the ALJ erred in (1) rejecting the opinions of the State Agency analyst regarding Plaintiff's physical limitations but granting great weight to his opinions regarding Plaintiff's mental capacity; (2) assigning limited weight to the opinion of consultative examiner, Jed Weitzen, Ph.D.; and (3) assigning only partial weight to the opinion of Plaintiff's

alcohol and drug counselor, Ron Schoneman. Defendant counters that (1) the Physical RFC Assessment form was completed by an analyst, who is not an acceptable medical source, and therefore it would have been error for the ALJ to assign any weight to that opinion; (2) the ALJ appropriately considered the Mental RFC Assessment form, which was completed by a medical consultant, who is an acceptable medical source; (3) the ALJ assigned the appropriate weight to Dr. Weitzen's opinion because it is inconsistent with his own findings; and (4) the opinion of Mr. Schoneman is contradicted by other evidence in the record.

Here, the ALJ first explained that the record "does not contain any medical opinions assessing [Plaintiff's] physical limitations" and that he has given no weight to the State Agency analyst's opinion that Plaintiff is limited to sedentary work because to grant any significance to that opinion "would be contrary to the *de novo* nature of this proceeding." (T. 20 [citing T. 432].) Regarding the medical opinion evidence of Plaintiff's mental limitations, the ALJ explained that he assigned limited weight to the opinion of consultative examiner, Dr. Weitzen, that Plaintiff is disabled because that opinion is not supported by his own examination. (T. 21 [citing T. 397].) The ALJ further explained that he assigned great weight to the opinion of the State Agency medical consultant that Plaintiff retains the ability to work in a low contact setting because it is well supported by references to record evidence. (T. 21 [citing T. 460-461].) Finally, the ALJ assigned only partial evidentiary weight to the opinion of substance abuse counselor, Ron Schoneman, that Plaintiff has difficulties being in large groups or in the public because it is not supported by the record evidence. (*Id.* [citing T. 597-598].)

First, it is important to note that the ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). The opinion of a treating physician is entitled to controlling weight when (1) the opinion is well supported by medically acceptable clinical and laboratory

7

diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

First, regarding Plaintiff's mental limitations, the ALJ did not err in considering the opinion of State Agency medical consultant, J. Dambrocia, because he is a licensed psychologist and therefore, an acceptable medical source. *See* 20 C.F.R. § 416.913(a)(2). Also, while the ALJ should afford more weight to an examining source than a non-examining source, he correctly noted that Dr. Weitzen's opinion that Plaintiff is disabled is a dispositive determination that is reserved for the Commissioner. *See Lopez-Delgado v. Comm'r of Soc. Sec.*, No. 13-CV-5727, 2014 WL 3687276, at*7 (S.D.N.Y. July 23, 2014) (citing 20 C.F.R. § 416.927(d)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999)). Also, as the ALJ correctly noted, Dr. Weitzen's opinion is not supported by his own treatment notes. For example, Dr. Weitzen opined that "it is highly unlikely that [Plaintiff] will be able to carry out and effectively remember instructions" but his findings include that Plaintiff's "[r]emote memory skills are fair, whereas, recent memory skills are somewhat better" and that her "[a]ttentiveness and concentration are adequate." (T. 396-397.) Dr. Weitzen also opined that Plaintiff "may also have difficulty responding appropriately to supervisors, coworkers and average work pressures," but his findings include that her "[i]nsight is actually fairly good [,] judgment is adequate[, and] her impulse control appears to be grossly intact." (*Id.*) In addition, Dr Weitzen found that Plaintiff "related in a focused and essentially cooperative manner." (T. 395.)

Finally, the ALJ considered the opinion of Ron Schoneman, a Certified Alcohol and Substance Abuse Counselor. Such a counselor is not an acceptable medical source under 20 C.F.R. § 416.913(a), but could be considered as an "other source" under 20 C.F.R. § 416.913(d). *Kunkel v. Comm'r of Soc. Sec.*, No. 12-CV-6478, 2013 WL 4495008, at *11 (W.D.N.Y. Aug. 20, 2013. Accordingly, Mr. Schoneman's opinion could properly be considered "to show the severity of [Plaintiff's] impairment[] and how it affects [her] ability to work." 20 C.F.R. §

9

416.913(d). Mr. Schoneman opined that Plaintiff has difficulty "being in large groups or even being in public[, has], at times[] cancelled group [therapy] because of this anxiety," and that her anxiety appears to have increased since her abstinence from drugs and alcohol. (T. 597.) The ALJ correctly noted that the record evidence established that when Plaintiff did not appear for group therapy, it was reportedly due to her back pain, not anxiety. (T. 21 [citing T. 566, 576-578].) The ALJ concluded, nonetheless, that Mr. Schoneman's opinion supports a finding of some limitations for social contact, but there is nothing in his treatment records to suggest that Plaintiff could not meet the basic demands of unskilled work.

Regarding Plaintiff's physical limitations, the ALJ did not err in failing to consider the opinion of State Agency analyst, M. Maffucci. "Opinions of a disability analyst, who has no medical training, are not entitled to evaluation as medical opinions." *Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *11, n.21 (N.D.N.Y. Feb. 25, 2014) (citing *Campbell v. Astrue*, 713 F. Supp.2d 129, 139 (N.D.N.Y.2010); 20 C.F.R. § 404.1527(a)(2)). In fact, "[i]t is indeed an error to treat 'a disability analyst as a doctor." *Id.* (citing *Hopper v. Comm'r of Soc. Sec.*, No. 06-CV-38, 2008 WL 724228, at *10 (N.D.N.Y. Mar. 17, 2008) (finding a disability analyst's opinions are "not a medical source opinion entitled to any weight")).

However, the ALJ erroneously stated that there are no medical opinions assessing Plaintiff's physical limitations and further, failed to discuss the weight assigned to these opinions. To be sure, the ALJ mentioned certain of the examination notes of Plaintiff's treating physicians, Valentina Galynova, M.D., Ralph Ortiz, D.O. and Andrew J. Morpurgo, M.D.[2] in

---

[2] Each of these doctors treated and evaluated Plaintiff over a period of months and consequently, meet the definition of a treating physician under the regulations.

The regulations define a treating physician as the claimant's "own

10

support of his conclusion that "the evidence in the record reveals that [Plaintiff's] treatment have been quite conservative, and her allegations of significant functional limitations are not supported by the clinical findings and objective medical evidence in the record." (T. 22 [citing T. 343-344, 375, 401, 403].) While the record does not include a detailed assessment of Plaintiff's limitations from her treating sources, the ALJ is still required to sufficiently explain the weight assigned to their treatment opinions.

Also, it appears the ALJ may have misinterpreted some of those opinions. For example, the ALJ noted that on July 13, 2009, despite Plaintiff having complained of elevated pain, Dr. Ortiz noted "'no significant changes in physical findings' and recommended only pain medication." (T. 22 [citing T. 343-344].) However, the ALJ neglected to note that from January through August of 2009, Dr. Ortiz repeatedly found that Plaintiff had spinal swelling and tenderness, tenderness in her pelvis and hips, limited range of motion with discomfort in her spine and limited range of motion of her hips, and a positive leg raising test. (T. 341-374.) Moreover, the ALJ failed to note that Dr. Ortiz changed Plaintiff's pain medication to "better cover" her pain in both February and March of 2009. (T. 364, 369.) The ALJ also noted that Dr. Morpurgo found that Plaintiff ambulated without use of an assisting device in December 2009

> physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. Deference to such a medical source is appropriate because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." *Id.* § 404.1527(c)(2).

*Randolph v. Colvin*, No. 12-CV-8539, 2014 WL 2938184, at *8 (S.D.N.Y. June 30, 2014).

11

and that Plaintiff's strength in her lower extremities continued to be normal in February 2010. (T. 22 [citing T. 401, 403].) However, the ALJ failed to note that Dr. Morpurgo repeatedly found tenderness in Plaintiff's lower back from September 2009 through February 2010 and found that Plaintiff had limited range of motion in her spine in September 2009 and February 2010. (T. 401, 403, 404.)

For these reasons, the ALJ did not err in weighing the medical opinions of record regarding Plaintiff's mental limitations but did err in failing to weigh the opinions of Plaintiff's treating physicians regarding her physical limitations. Accordingly, remand is necessary so that the ALJ can appropriately evaluate and explain the weight he assigns to those opinions.

### B. Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the negative in part for the reasons stated in Plaintiff's memorandum of law, (Dkt. No. 12 at 18-20 [Pl.'s Mem. of Law]). The Court adds the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id*., at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id*.

Here, in support of his conclusion that Plaintiff's "treatment has been quite conservative, and ger allegations of significant functional limitations are not supported by the clinical findings and objective evidence of record," the ALJ noted record evidence that, as indicated in Point IV.A. of this Decision and Order, may have been misinterpreted. Moreover, the ALJ concluded that Plaintiff "maintains a reasonable activity level," relying in part on activities she engaged in outside of the relevant time period and prior to the injury that precipitated her back pain. (T. 23, 56, 194.) This was error. Accordingly, because this Court is unable to glean the extent to which this evidence was weighed by the ALJ in assessing Plaintiff's credibility, remand is necessary. Moreover, to the extent remand is necessary so that the ALJ may reevaluate evidence after addressing the treating physician rule, the ALJ should also consider whether his reevaluation

13

alters the assessment of the Plaintiff's credibility in light of the evidence as a whole. *See Balodis v. Leavitt*, 704 F. Supp. 2d 255, 268, n.14 (E.D.N.Y. 2010).

### C. Whether the ALJ Impermissibly Substituted His Lay Opinion for the Opinion of an Acceptable Medical Source

After carefully considering the matter, the Court answers this question in the affirmative in part for the reasons stated in Plaintiff's memorandum of law, (Dkt. No. 12 at 16-18 [Pl.'s Mem. of Law]). The Court adds the following brief analysis.

Here, the ALJ determined that treatment for Plaintiff's back pain was conservative, noting that she received "only" medication. (T. 22.) However, the record reflects that Plaintiff also received Physical Therapy. (T. 193-225.) In addition, the ALJ considered the objective diagnostic report of an MRI that Plaintiff received in December 2009, which revealed "a very small central disc protrusion as L5-S1 level causing ventral effacement of the ventral epidural fat; minuscule circumferential disc bulging at L4-L5 level; evidence of meningioma involving L4, L3 and T12 vertebral bodies; [and] no desiceation of the L4 disc." (T. 424.) In addition, Plaintiff previously received a lumbosacral x-ray in October 2009, which revealed "Grade 1 spondylolisthesis of L5 on S1 [and] bilateral spondylolysis of L5." (T. 340.) Without apparent reliance on the opinion of an acceptable medical source, the ALJ concluded, regarding the MRI result, that "[w]hile this diagnostic image supports the finding that [Plaintiff] experiences some physical limitations from her lower back condition, it is not consistent with the significant functional limitations she is currently alleging." (T. 22.) As a lay person, it was error for the ALJ to substitute his opinion for that of an acceptable medical source. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Accordingly, remand is warranted so that the ALJ may explain the basis for his conclusion, relying on appropriate and competent medical evidence.

### D. Whether the ALJ's RFC is Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the negative in part for the reasons stated in Plaintiff's memorandum of law, (Dkt. No. 12 at 10-21 [Pl.'s Mem. of Law]). The Court adds the following brief analysis.

Plaintiff argues that the ALJ's RFC is not based on substantial evidence due to, among the reasons previously addressed in Points IV.A. through IV.C. of this Decision and Order, the ALJ's failure to fully develop the record by seeking a consultative examination from a back specialist.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *McDowell v. Colvin*, 11-CV-1132, 2013 WL 1337152, at *3-4 (N.D.N.Y. Mar. 11, 2013) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996)). It is well established this obligation requires the ALJ to thoroughly develop the record, considering "all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *House v. Astrue*, No. 11-CV-915, 2013 WL 422058, at *1-2 (N.D.N.Y. Feb. 1, 2013) (quoting SSR 96-8p, 61 Fed. Reg. 34, 474, 34,477 (July 2, 1996)); accord *Falcon v. Apfel*, 88 F. Supp.2d 87, 90-91 (W.D.N.Y.2000). To fulfill this duty the ALJ should order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision. *See Gentile v. Colvin*, No. 13-CV-880, 2014 WL 3534905, at *15-16 (N.D.N.Y. July 17, 2014) (citing 20 C.F.R. § 416.917). The Regulations require that the ALJ must order a consultative examination when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved." 20 C.F.R. § 416.919a(b)(4)).

Here, the record lacks a broad assessment of Plaintiff's physical functional limitations by an acceptable medical source. Accordingly there is an insufficiency in the record that the ALJ should have addressed, either by obtaining the opinion of a consultative examiner or by re-contacting one of Plaintiff's treating physicians. Therefore, on remand the ALJ should fully develop the record in this regard and then determine Plaintiff's physical RFC based on a fully developed record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: August 19, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge